Judge Simpson
delivered the opinion of the Court.
Kinder, a boy of color, exhibited a bill in chancery, in which he alledged that his mother was a free woman of color, and he was born free: That Graham was the owner of an old black man named Ned, who was the husband of complainant’s mother;- and that in the year 1842 Graham- and his mothér, entered into a written contract by which the former sold Ned to the latter, and in consideration thereof the latter sold and transferred to the former, all her right to the complainant, and to another son by the name of Timothy, until they arrived at the age of twenty-one. He also alleged that Ned was very old and of little value at- the time the contract was entered into* but that Graham availing himself of the wife’s affection for her husband, had fraudulently induced her to make the-agreement, although Ned- was so old and infirm-that he was a charge instead of a benefit.
The complainant also alleged that Graham by virtue of the contract, had taken him into his possession and *61 had hired him out from year to year, whereby he had been subjected to bad treatment and harsh usage; and' that a short time previously, an- effort had been madte by a man by the name of Hart, to sell him to a Southern trader as a slave for life, which was done with the ap*probation and concurrence of Graham; . He therefore appealed to the Chancellor to discharge him from the custody of Graham, and by an amended bill, prayed a decree against him for the value of his services during the time he had been retained in his employment.
The decree-of the Circuits Court.
His mother and also his brother Timothy were made parties, and the latter by appropriate pleadings, allege ing and relying upon the same facts, prayed for similar relief.
Graham, admitted the hiring from year to year, but denied the alleged bad treatment, as well as the alleged attempt to sell the complainant as a slave for life. He also denied that he had imposed upon the complainant’s mother in the contract alluded to, and alleged that Ned was of much more value than the complainant represented him to be.
The Court below decreed that Graham was not entitled to the services of the two boys under his contract with, their mother, and that they were not subject to his control, but were absolutely free. A commissioner was also appointed to ascertain and report the value of Ned at the time of the contract, and the value of the services of the two boys during the time Graham had them in his possession. From that decree Graham has appealed.
The counsel for the appellant has attempted to sustain Graham’s right to the services of the boys by treating the contract, which was by deed, as an indenture of apprenticeship, or if it be not effectual for that pur j pose, and does not create the relation of master and apprentice, as an instrument, sufficient under the second section of the act of 1797, (1 Stat. Law, 766,) to constitute and appoint Graham their guardian, and to vest him as such with a right to their services.
A free negro woman cannot sell her children by-indenture, tho’ for a time only; such an act is not effectual, either under the act of 1797: (1 Slat. Lam, 766.)
An indenture which imposes duties upon the person to whom it is made, of a personal character & confidence, cannot be assigned.
The Chancellor has jurisdiction to hear and relieve the complaints of wards, and free negroes, who are bound to service for a time, to prevent irreparable injury being done by selling them into perpetual slavery, or maltreatment.
The mother (a free negro) sold her children for a term of seven years, the purchaser having violated the contract, the Chancellor rescinded it: Held that no hire could be recovered by the children, ' who had voluntarily served under the contract made by the mother, though it might by the mother from the time suit brought, but not longer — argu
*62 But the writing does not purport to create either the 'relation of master and apprentice, or guardian and ward. It is a sale by a mother, of her two sons, until they attain -the age of twenty-one. They are regarded in the instrument as slaves until that period, and not as apprentices. It is not a grant , of the custody and tuition of the grantor’s children to the grantee, as contemplated and authorized by the act of 1797, nor is it executed by the father, as required by that act.
If however, either relation was created, by the writing under consideration, it implied a personal confidence in Graham, and imposed upon him certain duties, which he has violated and disregarded. Regarding the boys in the light either of apprentices or wards, he had ■no' right to hire them out, or transfer their services to other persons. The testimony shows that he treated them in every respect as slaves; and if he did not participate in the attempt to sell one of them into slavery during life, had enabled Hart to make the effort, by having sold the boy to him until he arrived at the age of twenty-one.
Under such circumstances a Court of Chancery had jurisdiction to afford relief. If Graham occupied the attitude of guardian, it had jurisdiction to hear the complaints of his wards.. If he did not occupy that attitude as the persons asking the aid of the Court, although free, were virtually held in slavery, and all their rights as free persons denied and disregarded; and if sold as slaves and removed from the country of their birth,' they would have sustained an irreparable injury, and might have been deprived of their right to freedom; a Court of Chancery could alone prevent the injury, and afford adequate redress.
The decree of the Circuit Court is correct, therefore; so far'as it discharges the two boys from the custody ■and control of Graham, and those claiming under him. But as in the anomalous condition in which their mother was placed, she' was in fact, as-well as in legal contemplation their only parent, she should be regarded as to *63 some extent, vested with the authority and rights belonging to the father; and therefore entitled to the services of her children.
Burton for appellant.
As the alleged fraud in the contract between her and Graham was not established by the testimony, and the contract cannot be rescinded on that ground, we think it should have the effect of transferring to Graham and vesting in him, her right to the value of the services of the children whilst they remained voluntarily in his employment and under his control. The mother may not have had the right to sell her children as slaves for any period of time whatever; yet if they with her consent, performed service s for another person, she would be entitled to the compensation for their services, unless she had expressly or impliedly waived her right to it in their favor. But as Graham has violated his contract, and forfeited all right under it to the future service of the boys, and as they have manifested their unwillingness to remain with him, or serve him any longer, he has no claim upon them, or their services, since the institution of the present suit.
The decree as to the matters referred to the commissioner being merely interlocutory, cannot be revised by this Court. It is final so far as it decides that the complainants, Kinder and Timothy, are free, and that Graham has no right to the custody or control of them; and that part of the decree is right.
Wherefore the decree so far as it is final, is affirmed.